IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTEGRATED PEST
MANAGEMENT SERVICES,
LLC,

                              Plaintiff,

        v.                                          1:04-cv-2880-WSD

BELLSOUTH ADVERTISING &
PUBLISHING CORPORATION
and L.M. BERRY AND
COMPANY,

                              Defendants.

## ORDER

This matter is before the Court on Defendants BellSouth Advertising &

Publishing Corporation's ("BAPCO") and L.M. Berry and Company's ("Berry")

Motion for Summary Judgment [31].

## I.    PRELIMINARY OBSERVATIONS

The Court notes initially the failure of the parties to comply with their

obligations under the Local Rules to brief the issues before the Court on

Defendants' summary judgment motion.  Local Rule 56 requires the movant for

summary judgment to include with the motion and memorandum of law a separate,

concise, numbered statement of the material facts as to which it contends there is

no genuine issue to be tried, and requires the non-movant to respond to the

statement of undisputed material facts by objecting to, admitting or specifically

refuting each fact.  L.R. 56.1B(1), (2)(a), N.D. Ga.  The rule also permits the non-

movant to file a statement of additional facts which the non-movant contends are

material and present a genuine issue for trial.  Id. at 56.1B(2)(b).  If the non-movant

files such a statement, the movant must file a response which objects to, admits or

specifically refutes each fact.  Id. at 56.1B(3).  These requirements are

straightforward, but the parties in this case have failed to satisfy them.

Defendants' Statement of Material Facts [As] To Which There Is No

Genuine Issue To Be Tried [31] filed in support of their Motion for Summary

Judgment and Plaintiff's Statement of Material Facts [As] To Which There Exists

Genuine Issues To Be Tried [35] do not comply with Local Rule 56.  First,

Defendants have failed to support any of their statements of material fact with a

citation to record evidence, leaving Plaintiff and the Court to determine what, if any,

record evidence supports these statements.  (See Defs.' Statement of Material

Facts ¶¶ 1-9.)  See generally L.R. 56.1B(1) ("The court will not consider any fact

. . . not supported by a citation to evidence (including page or paragraph number)

. . . .").  Although Defendants cite to record evidence to support the facts set out in the "Factual Background" section of their brief, such record citations are not sufficient to satisfy Local Rule 56.  See L.R. 56.1B(1) ("The court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts.").  Plaintiff's Statement of Material Facts [As] To Which There Exists Genuine Issues To Be Tried is similarly deficient.  Plaintiff does not respond to the individually numbered paragraphs in Defendants' statement, and it sets out additional alleged material facts but does not support these facts with record citations.  (Pl.'s Statement of Material Facts at ¶¶ 1-8.)  See generally L.R. 56.1B(2)(b), N.D. Ga.  Again, such record citations are found only in the "Factual Background" section of Plaintiff's response brief.  Defendants did not respond to these additional alleged material facts as required by Local Rule 56.  See L.R. 56.1B(3), N.D. Ga.

The distinction between the parties' statements of material fact and their recitation of the facts in their memoranda is not simply technical.  Requiring the movant to set out each of the material facts in a separate, concise paragraph supported by record citations, to which the non-movant specifically responds, permits the Court to assess each fact individually and determine whether it is

adequately refuted by the non-movant.  The Court cannot perform this function as efficiently or as accurately where, as here, the parties' respective versions of the facts are set out in narrative form in their memoranda and the opposing party is not forced to respond to each specific fact and either admit it or dispute it in the manner prescribed by Local Rule 56.1.

The Court considered ordering the parties to meet the unambiguous requirements of the Local Rules before considering Defendants' summary judgment motion.  However, because requiring the parties to re-submit their statements of material fact and responses to them would further delay the processing of this case, and because the issues presented here are relatively straightforward, the Court has reviewed the parties' respective statements of material fact, along with the "Factual Background" sections of their briefs, to determine, on its own, whether the material facts are undisputed or whether there are genuine issues to be tried with respect to certain material facts.  These facts are set out below.

## II.    BACKGROUND

Plaintiff is a Kentucky corporation providing pest and termite control services to residential and commercial customers in central Kentucky and southern

Indiana.  BAPCO is a Georgia corporation that publishes the Yellow Pages

directories and provides other advertising services to businesses.  Berry is an

authorized sales agent for BAPCO.

On or about March 28, 2002, Plaintiff (then doing business under the trade

name "NaturZone Pest Control") placed an order for advertisements in the

2002-2003 Louisville, Kentucky Yellow Pages (the "2002-2003 Yellow Pages").

Plaintiff ordered (1) a telephone listing and a small advertisement ("the TQC Ad")

to appear under the "Pest Control Services" heading in the 2002-2003 Yellow

Pages; and (2) an Internet listing and advertising to appear on the RealPages.com

website.[1]  The order form (the "Advertising Order") contains a "Limitation of

Liability" clause, which provides:

> UNLESS OTHERWISE AGREED IN WRITING, FOR
> MUTUAL CONSIDERATION, YOU AGREE THAT
> ANY LIABILITY WHICH WE MAY HAVE DUE TO
> ERRORS, OMISSIONS OR MISPLACEMENTS IN
> YOUR ADVERTISING SHALL NOT EXCEED THE
> AMOUNT OF CHARGES FOR THE AFFECTED
> ADVERTISING FROM THE TIME WE ARE
> NOTIFIED OF THE ERROR, OMISSION OR
> MISPLACEMENT UNTIL ITS CORRECTION.  Any

---

[1] Plaintiff also received a free listing in the general directory portion of the
2002-2003 Yellow Pages.

> such liability shall be discharged by abatement of all
> Advertising charges for any complete omission, or by
> reduction of the applicable charges in proportion to any
> reduction of the value of the Advertising due to error,
> omission or misplacement. . . . This limitation of liability
> applies to us, any of our authorized sales agents, your
> telephone service provider, any employees and any of our
> affiliated companies.  It applies to claims in contract, tort,
> strict liability or otherwise and to any loss of business,
> profits or additional Advertising costs which you may
> incur.

(Advertising Order ¶ 12.)  BAPCO acknowledged receipt of the Advertising Order

on March 29, 2002.  On or about April 17, 2002, BAPCO prepared and submitted

to Plaintiff a proof of the proposed advertisements, which Plaintiff accepted with

no changes.

In June 2002, Matt Simons ("Simons"), the Berry sales representative who

worked with Plaintiff regarding the Advertising Order, contacted Linda Myers

("Myers"), co-owner of Plaintiff.  Simons asked Myers if Plaintiff had decided to

cancel the TQC Ad.[2]  Myers informed Simons that Plaintiff had not canceled the

TQC Ad, and requested that Simons check to make sure that the TQC Ad would

_____

[2]  Apparently the TQC Ad was cancelled because Defendants incorrectly
believed that Plaintiff had disconnected the telephone number associated with the
this advertising, thus automatically omitting the Ad.

be published in the 2002-2003 Yellow Pages as agreed.  Simons promised to do this.  Over the next three consecutive days, Myers telephoned Simons to inquire about the TQC Ad.  Each time Simons claimed that the cancellation had been remedied, and that the Ad would be included in the 2002-2003 Yellow Pages.

In August 2002, Plaintiff received an invoice from BAPCO reflecting that the TQC Ad in the 2002-2003 Yellow Pages had, despite Simons' assurances to the contrary, been cancelled.  It was too late to correct the error -- the Ad could not be added to the directory at this late date.  Thus, although Plaintiff's Internet advertising, the listing Plaintiff purchased to appear under the "Pest Control Services" heading, and Plaintiff's free listing in the 2002-2003 Yellow Pages were printed accurately, its TQC Ad was omitted.  Defendants did not bill, and Plaintiff did not pay, the costs of the TQC Ad for the entire 2002-2003 publication period, which was valued at $680.00 per month, or $8,160.00 for the year.

III.   DISCUSSION

Plaintiff asserts claims against Defendants for breach of contract, gross negligence and fraud.  Plaintiff also seeks punitive damages in connection with its gross negligence and fraud claims.  Defendants move for summary judgment on all

of Plaintiff's claims.

A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555,

1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." <u>Graham</u>, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." <u>Herzog</u>, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


    B.    <u>Gross Negligence</u>

       Plaintiff asserts a claim for gross negligence against Defendants, alleging that Simons was grossly negligent in failing to carry out his promise to correct the cancellation of the TQC Ad.  (Compl., attached to Notice of Removal [1],¶¶ 29-31.)  Defendants argue summary judgment is warranted on this claim because Simons' alleged conduct does not give rise to a tort claim against Defendants for gross negligence.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 8-15.)

       Plaintiff cannot assert a claim for gross negligence based solely on Defendants' alleged breach of their obligations under the Advertising Order.  <u>See</u> <u>Swyters v. Motorola Employees Credit Union</u>, 535 S.E.2d 508, 510 (Ga. Ct. App.

2000) ("If no liability is claimed except that arising out of a breach of the express terms of a contract, the action lies in contract alone; an action in tort will not lie"). Instead, its claim for gross negligence must be based on an alleged breach of some independent duty created by statute or common law: "A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant also has breached an independent duty created by statute or common law." Wallace v. State Farm Fire & Cas. Ins. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000); see also Fay v. Custom One Homes, LLC, No. A05A1519, --- S.E.2d ----, 2005 WL 2863128, *4 (Ga. Ct. App. Nov. 2, 2005) ("[A] breach of contract claimant may only bring a tort claim where, in addition to breaching the contract, the defendant also breached a duty imposed by law."); Worsham v. Provident Companies, Inc., 249 F. Supp. 2d 1325, 1334 (N.D. Ga. 2002) (granting summary judgment on insured's tortious interference claim based on bad-faith denial of benefits because insured "fail[ed] to specific facts which would support a finding that [the insurer] owed her any duty independent of those created by the written insurance contract"); Arrow Exterminators, Inc. v. Zurich Amer. Ins. Co., 136 F. Supp. 2d 1340, 1354-55 (N.D. Ga. 2001) (granting summary judgment on insured's

negligence claims where insurer alleged negligence in processing of claim because the claims "raise[d] only breach of contract issues" and insured did not show a special relationship creating an independent duty); ServiceMaster Co., L.P. v. Martin, 556 S.E.2d 517, 523 (Ga. Ct. App. 2001) ("Any breach of contract must arise from the contract, and does not give rise to an action for tort, whether or not such breach was negligent or wilful."). If Plaintiff's gross negligence claim is based merely on Defendants' alleged failure to perform their contractual duty to publish the TQC Ad in the 2002-2003 Yellow Pages, summary judgment on this claim is warranted.

Plaintiff argues its claim is based on a duty independent of the parties' contract. (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 6-11.) Specifically, it contends that Simons' alleged promises to correct the mistaken cancellation of the TQC Ad created an "extra-contractual responsibility" and that his negligent failure to perform this duty gives rise to a tort claim. (Id. at 7-8.) This argument is without merit. Simons' alleged assurances that he would correct the cancellation of the TQC Ad did not create a duty independent of the Advertising Order. By promising to correct the cancellation, Simons merely promised to do what the Advertising Order obligated Defendants to do in the first instance: ensure the TQC

-11-

Ad would be published in the 2002-2003 Yellow Pages.  His alleged negligent failure to perform this contractual duty does not create a tort cause of action.  See Wallace, 539 S.E.2d at 512; ServiceMaster, 556 S.E.2d at 523.  Accordingly, summary judgment on Plaintiff's gross negligence claim is warranted.[3]

### C.     Breach of Contract

Plaintiff asserts a claim against Defendants for breach of contract based on their failure to publish the TQC Ad in the 2002-2003 Yellow Pages.  (Compl. ¶¶ 26-28.)  "The elements for a breach of contract claim in Georgia are merely the breach and the resultant damages to the party who has the right to complain about the contract being broken."  Odem v. Pace Acad., 510 S.E.2d 326, 331-32 (Ga. Ct.

---

[3]  Plaintiff also argues Simons' fraudulently misrepresented to Myers that the cancellation of the TQC Ad had been corrected, and that this conduct violated Defendants' independent duty to not willfully misrepresent material facts to Plaintiff, pursuant to O.C.G.A. § 51-6-2.  (Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. at 8.)  The Court agrees that, in appropriate cases, conduct undertaken in the course of contract performance can constitute a fraud under Georgia law and may give rise to a cause of action for fraud independent of the parties' contract.  This argument, however, is not relevant to Plaintiff's claim for gross negligence based on Simons' alleged failure to correct the cancellation of the TQC Ad.  Plaintiff has asserted a separate fraud claim, and Defendants do not dispute that fraud is actionable independent of the parties' contract.  (Defs.' Reply in Supp. of Mot. for Summ. J. at 8-9) ("Plaintiff alleges no extra-contractual duties on which its tort claim is based  . . . other than the duty not to make misrepresentations . . . .").

App. 1998) (quotations omitted).  Defendants do not dispute that the omission of the TQC Ad from the 2002-2003 Yellow Pages was a breach of the parties' contract.  They argue summary judgment is warranted on Plaintiff's breach-of-contract claim because Plaintiff, under the language of the contract, is precluded from recovering any alleged damages resulting from the breach claimed.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 15-16.)  Specifically, Defendants contend that the limitation of liability clause in the Advertising Order precludes recovery of damages other than the cost of the TQC Ad, which Plaintiff was not required to pay.  (Id.)

Limitations of liability clauses such as the one contained in the Advertising Order generally are enforceable under Georgia law.  See, e.g., Phelps v. BellSouth Adver. & Pub. Corp., 508 S.E.2d 779, 781-82 (Ga. Ct. App. 1998); S. Bell Tel. & Tel. Co. v. C & S Realty Co., 233 S.E.2d 9, 11-12 (Ga. Ct. App. 1977), overruled on other grounds sub nom. Georgia-Carolina Brick & Tile Co. v. Brown, 266 S.E.2d 531 (Ga. Ct. App. 1980).  Georgia courts have declined to enforce such clauses to preclude liability only where the defendant's conduct, in addition to constituting a breach of contract, gives rise to a tort claim for gross negligence or wanton or willful conduct.  See S. Bell Tel. & Tel. Co. v. Coastal Transmission

-13-

Serv., Inc., 307 S.E.2d 83, 86-87 (Ga. Ct. App. 1983) (holding that limitation of liability clause would not preclude liability where the plaintiff could show gross negligence or wanton or willful conduct).  "[W]here the breach of contract is not also a tort, limitations of liability for breach will usually be given effect."  Orkin Exterminating Co. v. Stevens, 203 S.E.2d 587, 591 (Ga. Ct. App. 1973).  Cf. ServiceMaster, 556 S.E.2d at 523 (holding that the plaintiff's allegations "do not authorize a remedy over and above that to which [the plaintiff] is entitled as a result of the breach of contract" because the duty breached by the defendant "was imposed solely by the written employment contract, and not by any recognized independent duty under tort or other provision of law.").

As discussed in Section III(B), supra, Defendants' breach of the contract did not violate a recognized duty independent of the contract and therefore does not give rise to a tort claim, regardless of whether the breach could be characterized as grossly negligent or willful or wanton.  The Court further finds that the limitation of liability clause is valid and enforceable, and that it precludes recovery of damages other than the cost of the TQC Ad.[4]  Because Plaintiff was not required to

---

[4]  Plaintiff in its response argues the limitation of liability clause as applied here violates Georgia's public policy against unconscionable contracts.  (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 13-15.)  An unconscionable contract is

pay for the TQC Ad, it is not entitled to damages for Defendants' breach of the contract and summary judgment on this claim is warranted.

    D.    <u>Fraud</u>

Finally, the Court considers Plaintiff's claim that there was some conduct on the part of Defendants which is actionable as fraud independent of the contract. The question with respect to this claim is whether Simons' alleged false representations that the TQC Ad cancellation had been remedied is actionable as fraud. This question is a difficult one, especially when the Court has concluded that summary judgment is appropriate on the claims arising out of the core commercial relationship between the parties. Ultimately, however, the Court must in this case determine if issues of fact on a legal claim exist. If they do, the Court must decline from precluding a jury from considering the claim even if the claim is weak and the damages allegedly suffered suspicious.

---

one that "no sane man acting under a delusion would make and that no honest man would take advantage of." <u>Hall v. Fruehauf Corp.</u>, 346 S.E.2d 582, 583 (Ga. Ct. App. 1986) (citing <u>R.L. Kimsey Cotton Co. v. Ferguson</u>, 214 S.E.2d 360 (1975)). The limitation of liability clause at issue in this case does not satisfy this standard. <u>See</u> <u>Imaging Sys. Int'l v. Magnetic Resonance Plus, Inc.</u>, 490 S.E.2d 124, 127 (Ga. Ct. App. 1997) ("Absent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party.") (citations omitted).

Plaintiff asserts a fraud claim against Defendants based on Simons' alleged misrepresentations to Myers concerning the TQC Ad.  (Compl. ¶¶ 32-33.)  "A fraud claim has five elements: (a) a false representation by the defendant, (b) scienter, (c) an intent to induce the plaintiff to act or refrain from acting, (d) justifiable reliance by the plaintiff, and (e) damage to the plaintiff."  Ledford v. Smith, 618 S.E.2d 627, 634 (Ga. Ct. App. 2005).  Defendants argue Plaintiff's fraud claim fails because (1) Plaintiff cannot demonstrate scienter, i.e., that Simons knew his representations concerning the TQC Ad were false; (2) Plaintiff cannot show that Simons intended to induce Plaintiff to act or refrain from acting; and (3) Plaintiff's claim for lost profits is speculative and not supported by adequate evidence.[5][6]  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 16-18, 21-22.)

---

[5] Plaintiff does not dispute that the only damages sought in connection with its fraud claim are its lost profits for 2002-2003 and beyond, as well as punitive damages.

[6] Defendants also argued that, to the extent Plaintiff's fraud claim was based on representations made before or contemporaneous with the Advertising Order, this claim failed because the merger clause precluded reasonable reliance on such representations.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 19-21.)  Plaintiff in its response clarified that its fraud claim is based on Simons' alleged representations made in June 2002, after the Advertising Order was submitted to and accepted by Defendants.  (See Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 18-19.)  Thus, the merger clause does not apply here.  (See Defs.' Reply in Supp. of Mot. for Summ. J. at 12.)

Defendants' scienter argument is not persuasive.  There are two categories of representations to Myers at issue in this case.  First, that Simons represented that he would correct the cancellation and ensure the TQC Ad would be included in the 2002-2003 Yellow Pages.  This category of representations consists of promises regarding future conduct which are not actionable as fraud absent evidence that Simons did not intend to carry out these promises at the time he made them.  See Equifax v. 1600 Peachtree, LLC, 601 S.E.2d 519, 525-26 (Ga. Ct. App. 2004) ("The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future.  Nor does actionable fraud result from a mere failure to perform promises made.  Otherwise any breach of a contract would amount to fraud.").  Plaintiff's fraud claim does not rely on these promises regarding future conduct.  Instead, Plaintiff's fraud claim rests on the second category of representations to Myers:  Simons' representations that he had corrected the cancellation and that no further action was required to ensure the TQC Ad would be published as agreed.  (See Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 20.)  This category of representations consists of factual statements which are actionable as fraud if Simons knew the statements were false or acted

-17-

recklessly with respect to their truth or falsity and if Plaintiff suffered cognizable damage as a result of the alleged misrepresentations.  See Abrams & Wofsy v. Renaissance Inv. Corp., 820 F. Supp. 1519, 1530 (N.D. Ga. 1993) ("Under Georgia law, the scienter requirement encompasses either actual knowledge or recklessness.  Recklessness constitutes a deliberate 'refusal to know' where one 'blind[s] himself to the truth or falsity of a condition which he recklessly represents to his own advantage.'") (citations omitted).  Plaintiff has presented barely sufficient evidence from which a reasonable jury could conclude Simons knowingly misrepresented that the cancellation of the TQC Ad had been fixed and that no further action was necessary on the part of Plaintiff.

Defendants argue that Plaintiff cannot demonstrate Simons intended to deceive Plaintiff.  (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 21-22.) Specifically, they claim that because Plaintiff was not charged for the TQC Ad, neither Simons nor BAPCO derived any financial benefit from the TQC Ad and therefore Simons had no incentive, financial or otherwise, to deceive Plaintiff regarding the status of its advertising.  (Id.)  This argument is without merit. Plaintiff ordered several listings/advertisements other than the TQC Ad.  At the time of Simons' alleged misrepresentation concerning the status of the TQC Ad, the

2002-2003 Yellow Pages had not been printed, and presumably Plaintiff could have

canceled the entire Advertising Order and taken its business elsewhere.  A

reasonable jury reviewing the evidence of record could conclude that Simons

knowingly misrepresented the status of the TQC Ad to appease Myers and

preserve his commission on the other listings/advertisements that Plaintiff ordered.

Although Defendants' arguments concerning their lack of scienter and intent

to deceive are without merit, the Court finds summary judgment is warranted

because Plaintiff's claim for lost profits is speculative and not supported by

adequate evidence.  To recover lost profits, a plaintiff must demonstrate the

existence and amount of such lost profits, as well as show that the loss was the

direct result of the defendant's alleged conduct:

> Ordinarily, anticipated profits are too speculative to be
> recovered, "but where the business has been established,
> has made profits and there are definite, certain and
> reasonable data for their ascertainment, and such profits
> [were] in the contemplation of the parties at the time of
> the contract, they may be recovered . . . even though they
> can not be computed with exact mathematical certainty."
> Nonetheless, "to recover lost profits one must show the
> probable gain with great specificity as well as expenses
> incurred in realizing such profits.  In short, the gross
> amount minus expenses equals the amount of recovery."
> Further, the losses must be directly traceable to the acts
> of the other party.

Grossberg v. Judson Gilmore Assocs., Inc., 395 S.E.2d 592, 594 (Ga. Ct. App.

1990) (internal citations omitted).  Here, Plaintiff seeks $68,264.00 in lost profits for

2002-2003 and beyond.  To support its claim, Plaintiff submitted its tax returns for

the years 2001 through 2004 (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at Exs. J,

K, L, M), a summary of its lost profits calculation (id. at Ex. N), and telephone call

logs for customer "leads" received in 2003-2004 (Defs.' Mot. for Summ. J. at Exs.

E, F).

       The evidence submitted by Plaintiff falls significantly short of that which is

required to support an award of lost profits.  Plaintiff's tax returns show that

Plaintiff's pre-tax profits in 2003 (the year allegedly most affected by the omission

of the TQC Ad) were lower than its pre-tax profits in 2001, 2002 and 2004.

However, the returns do not show the required connection between the alleged

fraud and the alleged economic consequences of it.  Specifically, the returns do not

show Plaintiff's decreased profits in 2003 relate to a decrease in revenues generated

by pest control and termite services (as opposed to an increase in operating

expenses such as employee salaries), nor are they helpful in determining whether

this alleged decrease in profits is even traceable to Defendants' alleged conduct.

Plaintiff simply assumes that Defendants' conduct caused the alleged decrease in

profits because Defendants' alleged conduct and the decrease occurred in approximately the same time period.  This unsupported speculation is not sufficient evidence from which a reasonable jury could estimate the lost profits directly traceable to Defendants' omission of the TQC Ad.[7]

Plaintiff's telephone call logs and lost profits summary are likewise insufficient to demonstrate that Plaintiff's alleged lost profits are traceable to Defendants' alleged conduct.  Plaintiff states that to determine the profits it would have earned during 2002-2003 as a result of the omitted TQC Ad, it examined its telephone call logs for calls received after its advertisement was properly published in the 2003-2004 Yellow Pages.  (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 16-18.)  Using the number of new customers who indicated they had learned about Plaintiff through the 2003-2004 Yellow Pages, Plaintiff calculated the profits derived from these customers in 2003-2004.  Plaintiff requests that the Court award this same amount as lost profits for 2002-2003, and in addition, the lost profits for these customers for the next 10 or 20 years, based on the alleged respective yearly contract renewal rates for its pest control and termite control customers.

---

[7]  In fact, Plaintiff agreed in the Advertising Order that "any potential harm from an error, omission or misplacement is speculative in nature."  (Advertising Order ¶ 12.)

The 2003-2004 telephone call logs which cite "the Yellow Pages" as the source of the customer referral do not specify whether the customer learned of Plaintiff's business from its TQC Ad, its Yellow Pages Internet advertising, the listing Plaintiff purchased to appear under the "Pest Control Services" heading in the Yellow Pages, or Plaintiff's free listing in the general directory portion of the 2003-2004 Yellow Pages.  Without this distinction between the various advertisements/listings provided by the Yellow Pages, the factfinder cannot determine how many, if any, of the 2003-2004 customer referrals are attributable to the TQC Ad.  Nor could the factfinder conclude with any reasonable certainty how many, if any, customer referrals were lost as a direct result of the omission of this Ad in the 2002-2003 Yellow Pages.[8]  Even if Plaintiff's claim for lost profits in

---

[8] Defendants also argue the telephone call logs are inadmissible hearsay and cannot be considered by the Court.  (Defs.' Reply in Supp. of Mot. for Summ. J. at 14-15).  This objection is not persuasive.  "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment."  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (quotations and citations omitted).  However, "[e]vidence produced for summary judgment need not be in an admissible form if it could be reducible to admissible form for trial . . . ."  Burgess v. Allstate Ins. Co., 334 F. Supp. 2d 1351, 1354 (N.D. Ga. 2003).  As regarding hearsay, "the term 'reduced to admissible form' . . . includes that the item is admissible at trial for some purpose, such as a hearsay exception."  Id.  Here, Plaintiff represents that Myers will testify at trial regarding the telephone call logs used to support its lost profits calculation.  (Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 16-17.)  Thus, it appears the telephone call logs may be reducible to

2002-2003 was adequately supported by the evidence, Plaintiff's claim for lost profits for the 10 or 20 year period following the omission of its TQC Ad is too speculative to support recovery.  The only evidence cited at summary judgment to support Plaintiff's claim for lost profits for 10 or 20 years following the omission of its TQC Ad is the unsworn, conclusory statements in Myers' July 1, 2004 letter to her attorney.  (See Pl.'s Resp. in Opp'n to Mot. for Summ. J. at 17-18, Ex. N.)

Plaintiff has failed to submit sufficient evidence from which a reasonable jury could estimate its lost profits damages for 2002-2003 and beyond, and these damages are too speculative to be recovered.  Because an award of damages cannot be based on conjecture, summary judgment on Plaintiff's fraud claim is warranted.

E.    Punitive Damages

Plaintiff seeks to recover punitive damages in connection with its claims for gross negligence and for fraud.  (Compl. ¶¶ 31, 33.)  Punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud,

---

admissible form at trial as business records, excepted from the definition of hearsay under Rule 803 of the Federal Rules of Evidence.  See Fed. R. Evid. 803(6).

wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1. "According to Georgia law, without a tort claim, punitive damages are simply not recoverable."  Harris v. Fulton-DeKalb Hosp. Auth., 255 F. Supp. 2d 1347, 1359 (N.D. Ga. 2002) (granting summary judgment on the plaintiff's claim for punitive damages because her independent tort claims already had been dismissed). Because the Court has granted summary judgment on Plaintiff's underlying tort claims for gross negligence and fraud, summary judgment on its claim for punitive damages also is warranted.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [31] is **GRANTED** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants on all of Plaintiff's claims.

**SO ORDERED**, this 16th day of November, 2005.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE